**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

ACRISURE OF CALIFORNIA, LLC,                    Case No. 1:26-cv-01227

        Plaintiff,                                             Hon.

v.

STEPHAN PLOTZKER,

        Defendant.

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

---

Plaintiff Acrisure of California, LLC ("Acrisure"), by and through its attorneys Skadden, Arps, Slate, Meagher & Flom LLP and Warner Norcross + Judd LLP, states its Complaint for Injunctive and Declaratory Relief against Defendant Stephan Plotzker ("Plotzker"), upon personal knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

### NATURE OF ACTION

1.      On April 14, 2026, Acrisure's then-employee Stephan Plotzker resigned from Acrisure to join one of Acrisure's direct competitors.  Plotzker was a highly compensated professional who sold his business, Bridgeport Insurance Brokers, Inc. ("Bridgeport"), as well as his personal goodwill, to Acrisure for millions of dollars and thereafter worked as an employee of Acrisure.  Plotzker's resignation follows those of several individuals who worked on Plotzker's Acrisure team, who also resigned to join Acrisure's direct competitor.

2.      Plotzker has violated his contractual obligations to Acrisure.  Through this action seeking injunctive relief and declaratory judgment, Acrisure seeks to enforce its rights pursuant

to the employment agreement entered into between Plotzker and Acrisure, effective April 1, 2015 (the "Employment Agreement") that was agreed to as a condition to Acrisure's purchase of Plotzker's business.  Plotzker's employment with a direct competitor violates the non-competition provision of the Employment Agreement.  Upon information and belief, Plotzker has also violated or will violate the non-solicitation provision of the Employment Agreement through the solicitation of additional former and current Acrisure employees to join Acrisure's competitor.  Upon information and belief, Plotzker has also violated or will violate the customer non-solicitation provision of the Employment Agreement through the solicitation of customers to persuade them to move their business to Acrisure's direct competitor.

3.      Through this injunctive relief action, Acrisure seeks to protect its rights and to enjoin Plotzker from violating the reasonable restrictive covenants agreed upon in the Employment Agreement.

4.      Acrisure has suffered, and will continue to suffer, irreparable harm as a result of Plotzker's unlawful conduct.

## **PARTIES**

5.      Acrisure of California, LLC is a limited liability company with its principal place of business at 100 Ottawa Avenue SW, Grand Rapids, Michigan.  Acrisure of California, LLC is a Michigan limited liability company and its sole member is Acrisure, LLC.  Acrisure, LLC is a Michigan limited liability company and its sole member is Acrisure Intermediate, Inc.  Acrisure Intermediate, Inc. is a Delaware corporation with its principal place of business in Michigan. Acrisure of California, LLC is a citizen of Delaware and Michigan.

6.      Defendant Stephan Plotzker is an individual who upon information and belief is a citizen of California.  Plotzker was a Client Advisor at Acrisure until he resigned on April 14, 2026, to join a competitor of Acrisure.

**JURISDICTION AND VENUE**

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Plotzker is a citizen of California.  Acrisure is a citizen of Michigan and Delaware.

8.      This Court has personal jurisdiction over Plotzker because Plotzker consented to personal jurisdiction in this Court in Section 16(d) of the Employment Agreement.  (Employment Agreement § 16(d)).  In addition, Plotzker's intentional acts at issue in this Complaint were intentionally aimed at Michigan and caused injury to Acrisure in Michigan.  Plotzker has sufficient minimum contacts with Michigan and otherwise purposefully availed himself of the benefits in this State in conducting his business, thereby rendering the exercise of jurisdiction by Michigan courts permissible under traditional notions of fair play and substantial justice.

9.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.  Venue in this district is also proper because Plotzker agreed in Section 16(d) of the Employment Agreement that any action arising from or related to the Employment Agreement seeking injunctive or equitable relief would be brought exclusively in either a state court located in Kent County, Michigan or a federal district court in the Western District of Michigan.

10.     In Section 16(d) of the Employment Agreement, Plotzker agreed that the Employment Agreement "shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of Michigan, without giving effect to any choice or law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan."  Plotzker further agreed that "[a]ll actions or proceedings arising from or related to this

3

Agreement and for which a party seeks injunctive or equitable relief shall be brought only in a state court of competent subject matter jurisdiction in Kent County, Michigan, or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan Southern Division.  Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not [to] object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise."

## FACTUAL BACKGROUND

### Acrisure Is A Global Fintech Leader
### Providing Financial Services In The Insurance Brokerage Industry

11.     Acrisure is a global fintech leader based in Grand Rapids, Michigan, that provides intelligence-driven financial services solutions across many industries, including the insurance brokerage industry.  Acrisure has offices throughout the United States.

12.     The insurance brokerage industry is highly competitive to soliciting and maintaining customers, accounts, and employees.

13.     Acrisure spends significant time and money developing an experienced and leading team of insurance brokerage professionals who help Acrisure's customers to address their unique needs and further their business relationship with Acrisure.

14.     Acrisure makes significant investments to acquire, build, and retain its customer base and customer relationships, its goodwill, business reputation and brand, and its employee workforce.

15.     Acrisure invests in innovative technology, training of its workforce, strong referral networks, and business contacts that are critical to developing and retaining its insurance customer relationships.

4

16.    Acrisure protects its business relationships by obtaining from employees who have particularly important roles agreements with reasonable restrictions in the form of non-competition and non-solicitation provisions, among others.

**In 2015, Acrisure Purchased An Insurance Brokerage
Owned In Part By Plotzker And Simultaneously Plotzker
Entered Into An Employment Agreement As A Condition To The Deal**

17.    In 2015, Plotzker and the co-owners of the insurance agency Bridgeport entered into an agreement to sell all outstanding shares of capital stock of Bridgeport to Acrisure for millions of dollars.  Plotzker also agreed to sell all of his personal goodwill to Acrisure for further millions of dollars.

18.    As part of Acrisure's purchase of Bridgeport and Plotzker's personal goodwill, in August 2015, the parties to that transaction entered into the Stock Purchase Agreement.

19.    Plotzker's execution of the Employment Agreement was a condition to the closing of Acrisure's purchase of Bridgeport and an inducement to Acrisure consummating the transaction.

20.    The Stock Purchase Agreement and Employment Agreement were negotiated by legal counsel for the parties, including legal counsel for Plotzker from the law firm Brown & Streza LLP.

21.    In the Employment Agreement, Plotzker acknowledged that Acrisure and Plotzker had "mutually prepared this Agreement through the process of negotiation and the involvement, to the extent desired, of independent counsel."  (Employment Agreement  § 16(h).)

22.    The Employment Agreement was an exhibit to the transaction closing documents.

23.    The Employment Agreement expressly references the Stock Purchase Agreement.

24.    Plotzker's agreement to the restrictive covenants contained in Section 12(b) of the Employment Agreement was a condition to closing under the Stock Purchase Agreement.

25.      Section 12 of the Employment Agreement contains a covenant of confidentiality.

26.      Section 12 of the Employment Agreement contains covenants of non-competition, defined below as the Non-Competition Covenant.

27.      Section 12 of the Employment Agreement contains covenants of non-solicitation, defined below as Business Non-Solicitation Covenants and the Employee Non-Solicitation Covenant.

28.      Pursuant to Section 12(b) of the Employment Agreement, Plotzker acknowledged that he agreed to the Non-Competition Covenants, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant "[i]n consideration of, and as a condition and inducement to Employer's purchase of the assets of [Bridgeport]."  (Employment Agreement § 12(b).)

**Plotzker Agreed To Reasonable Restrictive Covenants In The Employment Agreement**

29.      At Acrisure, Plotzker was responsible for, among other things, managing, soliciting, and selling customers various insurance products and services, providing related services to and developing goodwill with customers.  Plotzker had access to, and made use of, Acrisure's proprietary and confidential information.

30.      Plotzker was highly compensated by Acrisure, receiving annual compensation in the six figures at the time of his departure.

31.      In Section 8(a)(i) of the Employment Agreement, Plotzker agreed to provide "at least forty-five (45) days' prior written notice" in order to terminate his employment. (Employment Agreement § 8(a)(i)) (the "Notice Provision").

32.      Acrisure hired and highly compensated Plotzker in exchange for, among other things, Plotzker's agreement to reasonable restrictive covenants in the Employment Agreement.

33.      Plotzker agreed in the Employment Agreement to a non-competition covenant. Specifically, Plotzker agreed:

6

(a)    in Section 12(b)(i)-(ii) of the Employment Agreement that for the three-consecutive-year period after his termination, Plotzker would not engage in competition with Acrisure or Acrisure's business or engage in or contribute his knowledge or abilities, whether as an employee, consultant, contractor, director, officer, owner, agent, or otherwise, to any person or company that competes with Acrisure or its affiliates ("Competitive Activity").

(Employment Agreement § 12(b)(i)-(ii) (the "Non-Competition Covenant").)

34.    Plotzker agreed in the Employment Agreement to customer non-solicitation covenants.  Specifically, Plotzker agreed:

(a)    in Section 12(b)(iv) of the Employment Agreement that for the three-consecutive-year period after his termination, Plotzker would not, directly or indirectly, solicit business of the type performed by Acrisure or its affiliates from any person or company that is Acrisure's or its affiliates' customer at the time of such solicitation, or who was a customer of Acrisure or its affiliates during the one-year period preceding the solicitation.

(b)    in Section 12(b)(v) of the Employment Agreement that for the three-consecutive-year period after his termination, Plotzker would not, directly or indirectly, persuade any person or company that is Acrisure's or its affiliates' customer at the time of such persuasion, or that was Acrisure's or its affiliates' customer during the one-year period preceding the

7

persuasion, to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(c)   in Section 12(b)(vi) of the Employment Agreement that for the three-consecutive-year period after his termination, Plotzker would not, directly or indirectly, persuade any insurance company or other insurance business related supplier of Acrisure or its affiliates to cease doing business with or to reduce the amount of business done with Acrisure or its affiliates.

(*Id.* § 13(b)(iv)-(vi) (the "Business Non-Solicitation Covenants").)

35.   Plotzker agreed in the Employment Agreement to an employee non-solicitation covenant.  Specifically, in Section 13(b)(iii) of the Employment Agreement, Plotzker agreed that for the three-consecutive-year period after his termination, Plotzker would not, directly or indirectly, employ, or assist any other person or company in employing, any person who is then employed by Acrisure or its affiliates or was employed by Acrisure or its affiliates during the one-year period preceding the employment or assistance.  (*Id.* § 13(b)(iii) (the "Employee Non-Solicitation Covenant").)

36.   The Non-Competition Covenant is subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.* § 12(b).)

37.   The Business Non-Solicitation Covenants are subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.*)

38.   The Employee Non-Solicitation Covenant is subject to reasonable territorial restrictions as defined in the Employment Agreement.  (*Id.*)

39.   In Section 13(a) of the Employment Agreement, Plotzker agreed that the "duration, activities restricted by and geographic scope of the Restrictive Covenants" in Section

12—including the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant—"are reasonable and are necessary to protect the business and goodwill" of Acrisure.  (*Id.* § 13(a).)

40.    In Section 13(d) of the Employment Agreement, Plotzker agreed that if he violates any restrictive covenant in Section 12—including the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant—then the period applicable to each obligation he violated automatically will be extended by a period of time equal in length to the period during which the violation occurred.  (*Id.* § 13(d).)

41.    The restrictive covenants in Section 12 of the Employment Agreement are reasonable in scope to protect Acrisure's legitimate business interests (including its proprietary and confidential information and relationships with customers), are not harmful to the general public, and are not unreasonably burdensome to Plotzker.  Indeed, pursuant to the Employment Agreement, Plotzker agreed that those restrictive covenants are reasonable.  (*Id.* § 13(a).)

42.    The restrictive covenants in Section 12 of the Employment Agreement apply to the benefit of Acrisure and Acrisure's affiliates.  (*Id.* § 12(d).)

43.    Plotzker agreed that his breach of the restrictive covenants in Section 12 of the Employment Agreement "will cause irreparable harm."  (*Id.* § 13(a).)

**On April 14, 2026, Plotzker Resigned From Acrisure And Joined A Direct Competitor**

44.    On April 14, 2026, Plotzker informed Acrisure that he was resigning from Acrisure effective immediately.

45.    Upon information and belief, Plotzker accepted employment or otherwise became affiliated with a direct competitor of Acrisure or one of its affiliates.

46.    Upon information and belief, as of April 14, 2026, Plotzker is employed by or otherwise affiliated with the competitor or one of its affiliates.

47.     Plotzker did not provide Acrisure with written notice of termination of his employment at Acrisure at least 45 days before his resignation and joining a direct competitor of Acrisure's.  Plotzker violated the Notice Provision in his Employment Agreement.

48.     Upon information and belief, Plotzker is now working from his home in Huntington Beach, CA or at another location that is within the geographic restrictions of the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant.

49.     Upon information and belief, Plotzker's new role is substantially the same as the role Plotzker held when he worked at Acrisure.

50.     Upon information and belief, Plotzker intends to immediately compete against Acrisure.

51.     The competitor is an insurance brokerage firm.

52.     The products and services of the competitor are competitive to the products and services of Acrisure.

53.     Upon information and belief, Plotzker solicited Acrisure employees to join him at the competitor.

54.     Upon information and belief, Plotzker assisted the competitor in hiring Acrisure employees.

### Plotzker Agreed That The Employment Agreement Would Be Governed By Michigan Law

55.     In Section 16(d) of the Employment Agreement, Plotzker agreed that:

> The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the **State of Michigan**, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Michigan.

10

(Employment Agreement § 16(d) (emphasis added).)

### Plotzker Agreed That Acrisure Is Entitled
### To Obtain Injunctive Relief If He Breached The
### Restrictive Covenants In The Employment Agreement

56.     Pursuant to Section 13(b) of the Employment Agreement, Plotzker agreed that

Acrisure "shall be entitled to legal and equitable relief in court" if Plotzker "breaches any

Restrictive Covenant" in Section 12 of the Employment Agreement.  (Employment Agreement

§ 13(b).)  Plotzker further agreed that Acrisure "shall be entitled to seek court action . . . to

specifically enforce the terms of the Restrictive Covenants, and to obtain a temporary or

permanent injunction in an action in equity without the necessity of proving actual damages."

(*Id.*)  This includes the right "to seek and obtain a temporary restraining order immediately upon

the commencement of any such action.  Such temporary injunction shall remain in effect,

pending a hearing where [Plotzker] must show cause as to why such injunction should be lifted."

(*Id.*)

57.     In Section 13(a) of the Employment Agreement, Plotzker agreed that a breach of

the restrictive covenants contained in Section 12 of the Employment Agreement would "cause

irreparable harm to" Acrisure.  (*Id.* § 13(a).)

58.     Unless enjoined, Plotzker will continue to violate his contractual obligations to

Acrisure.

59.     Plotzker's wrongful conduct is causing immediate, irreparable harm to Acrisure.

### Plotzker Agreed That All Disputes Related To
### The Employment Agreement Would Be Resolved Only In Michigan

60.     In Section 16(d) of the Employment Agreement, Plotzker agreed that all actions

arising from or related to the Employment Agreement for which a party seeks injunctive relief

shall be brought only in a Michigan court:

11

> All actions or proceedings arising from or related to this Agreement and **for which a party seeks injunctive** or equitable relief shall be brought **only** in a state court of competent subject matter jurisdiction in Kent County, Michigan, **or in the federal courts of competent subject matter jurisdiction in the Western District of Michigan Southern Division**.  Each party expressly and irrevocably consents to personal jurisdiction and venue in such courts, and agrees not [to] object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise.

(*Id.* § 16(d) (emphasis added).)

61.    In Section 16(d) of the Employment Agreement, Plotzker agreed that he "expressly and irrevocably consents to personal jurisdiction and venue in such [Michigan] courts, and agrees not [to] object to such jurisdiction or venue on the ground *of forum non conveniens* or otherwise."  (*Id.* § 16(d).)

### COUNT I
### (Breach of Employment Agreement — Injunctive Relief: Non-Competition Covenant)

62.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

63.    The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Plotzker.

64.    The Employment Agreement was made for valid consideration.

65.    Acrisure fully performed its obligations under the Employment Agreement.

66.    Under the Employment Agreement, Plotzker agreed to abide by the Non-Competition Covenant during his employment and for three years following his termination from Acrisure.

67.    The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

68.      Plotzker breached his obligations under the Employment Agreement by accepting an offer of employment from or otherwise becoming affilaited with a competitor of Acrisure within the time period and geographic restrictions of the Non-Competition Covenant.

69.      Plotzker's breach has and will directly and proximately cause Acrisure irreparable damage and injury, including to its competitive place in the insurance and risk management market and to its relationships with its customers, unless restrained and enjoined by this Court. There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

**COUNT II**
**(Breach of Employment Agreement — Injunctive Relief:**
**Business Non-Solicitation Covenants)**

70.      Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

71.      The Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Plotzker.

72.      The Employment Agreement was made for valid consideration.

73.      Acrisure fully performed its obligations under the Employment Agreement.

74.      Under the Employment Agreement, Plotzker agreed to abide by the Business Non-Solicitation Covenants during his employment and for three years following his termination from Acrisure.

75.      The Employment Agreement is reasonable and necessary to protect Acrisure's proprietary and confidential information, relationships with its customers, and other reasonable competitive business interests and Acrisure property.

76.      Upon information and belief, Plotzker has breached or intends to breach his obligations under the Employment Agreement by soliciting Acrisure customers to move their

business to Acrisure's direct competitor within the time period and geographic restrictions of the

Business Non-Solicitation Covenants.

77.     Plotzker's breach will directly and proximately cause Acrisure irreparable damage

and injury, including to its competitive place in the insurance and risk management market and

to its relationships with its customers, unless restrained and enjoined by this Court.  There is

immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which

there is no adequate remedy at law.

**COUNT III**
**(Breach of Employment Agreement — Injunctive Relief:**
**Employee Non-Solicitation Covenant)**

78.     Acrisure incorporates its allegations contained in the preceding paragraphs as if

fully stated herein.

79.     The Employment Agreement constitutes a valid, enforceable, and binding

contract between Acrisure and Plotzker.

80.     The Employment Agreement was made for valid consideration.

81.     Acrisure fully performed its obligations under the Employment Agreement.

82.     Under the Employment Agreement, Plotzker agreed to abide by the Employee

Non-Solicitation Covenant during his employment and for three years following his termination

from Acrisure.

83.     The Employment Agreement is reasonable and necessary to protect Acrisure's

proprietary and confidential information, relationships with its customers, and other reasonable

competitive business interests and Acrisure property.

84.     Upon information and belief, Plotzker has breached or intends to breach his

obligations under the Employment Agreement by employing or assisting Acrisure's competitor

in employing Acrisure employees.

85.     Upon information and belief, Plotzker intends to breach his obligations under the Employment Agreement by soliciting additional Acrisure employees to join Acrisure's competitor or otherwise assisting Acrisure's competitor in hiring additional Acrisure employees within the time period and geographic restrictions of the Business Non-Solicitation Covenants.

86.     Plotzker's breach has and will directly and proximately cause Acrisure irreparable damage and injury unless restrained and enjoined by this Court.  There is immediate and imminent danger that Acrisure will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT IV
### (Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202)

87.     Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

88.     An actual controversy has arisen and now exists between Acrisure and Plotzker concerning the parties' rights and obligations under the Employment Agreement.

89.     Acrisure requires a judicial determination of the respective rights of itself and Plotzker under the Employment Agreement.  Specifically, Acrisure seeks a declaration that, based on the plain language of the Employment Agreement:

(a)     The Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

(b)     Plotzker is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Non-Competition Covenant, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant.

15

90.     Such a declaration is necessary and appropriate at this time in order that Acrisure may ascertain its rights under the Employment Agreement, and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

## INJUNCTIVE AND DECLARATORY RELIEF REQUESTED

WHEREFORE, Acrisure requests that this honorable Court enter the following relief:

A.      Enjoin Plotzker from violating the Non-Competition Covenant for three years from (i) the date of Plotzker's termination of his employment at Acrisure or (ii) the date of Plotzker's last breach of the Non-Competition Covenant, whichever is later.

B.      Enjoin Plotzker from violating the Business Non-Solicitation Covenants for three years from (i) the date of Plotzker's termination of his employment at Acrisure or (ii) the date of Plotzker's last breach of the Business Non-Solicitation Covenants, whichever is later.

C.      Enjoin Plotzker from violating the Employee Non-Solicitation Covenant for three years from (i) the date of Plotzker's termination of his employment at Acrisure or (ii) the date of Plotzker's last breach of the Employee Non-Solicitation Covenant, whichever is later.

D.      Declare and decree that based on the plain language of the Employment Agreement:

i.      The Non-Competition Covenants, Business Non-Solicitation Covenants, and Employee Non-Solicitation Covenant in the Employment Agreement are valid and enforceable.

ii.     Plotzker is obligated to fulfill his obligations under the Employment Agreement, including, but not limited to, abiding by the Non-Competition

16

Covenants, Business Non-Solicitation Covenants, and Employee Non-

Solicitation Covenant.

E.      Grant Acrisure such other and further relief as the Court deems just and proper.

Dated:  April 15, 2026                           SKADDEN, ARPS, SLATE,
                                                      MEAGHER & FLOM LLP

                                                 By:  _/s/ Christopher G. Clark_____

                                                 Christopher G. Clark (663455-MA)
                                                 Catherine Fisher (686163-MA)
                                                 500 Boylston Street
                                                 Boston, Massachusetts 02116
                                                 (617) 573-4800
                                                 christopher.clark@skadden.com
                                                 catherine.fisher@skadden.com

                                                 - and -

                                                 WARNER NORCROSS + JUDD LLP
                                                 Edward J. Bardelli (P53849)
                                                 150 Ottawa Avenue, Suite 1500
                                                 Grand Rapids, Michigan 49503
                                                 (616) 752-2000
                                                 ebardelli@wnj.com

                                                 *Attorneys for Plaintiff*
                                                 *Acrisure of California, LLC*